THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| NADER DUTTA, and CHIZUKO DUTTA, husband and wife,<br><br>                    Plaintiff,<br><br>v.<br><br>AMICA MUTUAL INSURANCE COMPANY, a Rhode Island corporation,<br><br>                    Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 4:20-cv-00031-DN-PK<br><br>District Judge David Nuffer |

## BACKGROUND

This case is a dispute between an insured and insurer for underinsured motorist ("UIM") coverage. It involves an unfortunate car accident by a nonparty that left Plaintiffs Duttas physically injured. The collision took place in Hurricane, Utah. Duttas are residents of Texas and Defendant Amica Mutual Insurance ("Amica") is incorporated in Rhode Island.

Duttas brought this suit because Amica denied "Plaintiffs' UIM claim and declin[ed] to make any payment to them under the UIM portion of the insurance policy."[1] The most recent amended complaint[2] contains three causes of action: (1) UIM benefits pursuant to contract;[3] (2) breach of the implied covenant of good faith and fair dealing;[4] and (3) declaratory judgment as to

---

[1] Defendant Amica Mutual Insurance Company's Motion for Summary at 2, docket no. 54, filed Feb. 3, 2022.

[2] Third Amended Complaint, docket no. 70, filed July 6, 2022.

[3] *Id.* at ¶¶ 22-34.

[4] *Id.* at ¶¶ 35-38.

predicate matters.[5] Defendant refused to pay because it determined "Plaintiffs were more than 50% at fault for the accident."[6]

In July 2022, the parties filed a stipulated motion[7] agreeing that "Texas substantive contract and first-party insurance law applie[d] to this lawsuit."[8] The motion was granted[9] by Magistrate Judge Kohler. Consistent with Texas law, "Plaintiffs' extracontractual claims [were] severed and abated until liability of the underinsured motorist [had] been established by the finder of fact."[10]

In February 2022, Amica filed a motion for summary judgment asking that Duttas be found to be more than 50% at fault for the collision. Duttas filed an opposition.[11] And Amica filed a reply in support of the motion.[12] This order determines Duttas' fault was greater than that of the tortfeasor.

---

[5] *Id.* at ¶¶ 39-40.

[6] Motion for Summary Judgment 2.

[7] Stipulated Motion Concerning Applicability of Texas Substantive Law and Severance and Abatement of Extra-Contractual Claims, docket no. 33, filed Dec. 9, 2020.

[8] *Id.* at ¶ 1.

[9] Order Granting Stipulated Motion Re (1) Applicability of Texas Substantive Law and Severance and Abatement of Extra-Contractual Claims and (2) Filing of Amended Complaint, docket no. 34, filed Dec. 14, 2020.

[10] *Id.* at ¶ 2.

[11] Memorandum in Opposition to Defendant's Motion for Summary Judgment, docket no. 56, filed Feb. 28, 2022.

[12] Defendant Amica Mutual Insurance Company's Reply Motion for Summary Judgment at 1, docket no. 59, filed Mar. 18, 2022.

# TABLE OF CONTENTS

## Contents

BACKGROUND ................................................................................................ 1
TABLE OF CONTENTS .................................................................................. 3
UNDISPUTED FACTS ..................................................................................... 4
    The facts leading up to the collision, and the collision itself ...................... 4
    Ms. Pili's testimony .................................................................................. 8
    Officers' testimony ................................................................................... 10
    Duttas' testimony ..................................................................................... 11
    Ms. Dayley's testimony ........................................................................... 13
    Plaintiffs' insurance and this lawsuit ...................................................... 13
STANDARD OF REVIEW .............................................................................. 13
    Summary Judgment Standard of Review ................................................. 13
    Special Considerations in Negligence Cases ........................................... 14
APPLICABLE LAW ......................................................................................... 15
    Utah negligence law applies because Utah has  the "most significant relationship" with
    the collision ............................................................................................. 15
    Under Utah's comparative negligence law, Duttas may not recover  if their fault exceeds
    Ms. Pili's ................................................................................................. 16
DISCUSSION .................................................................................................... 17
    Ms. Pili's fault did not exceed Duttas' negligence .................................. 18
        Two of Duttas' arguments misconstrue deposition testimony and do not show Ms.
        Pili's negligence ................................................................................ 19
        The remainder of Duttas' stated facts do not show Ms. Pili's negligence ........... 23
    Duttas were more than 50% at fault for the collision ............................... 26
        Duttas failed to use a marked or unmarked crosswalk to walk across State Street
        .......................................................................................................... 26
        Duttas negligently crossed a five-lane medium speed highway after sunset,
        recently after it had rained, while wearing dark clothing ......................... 27
        Duttas were negligent for using in the center turning lane, a non-pedestrian
        location .............................................................................................. 29
        Duttas negligently failed to watch westbound traffic while in the center turning
        lane .................................................................................................... 30
    The negligence analysis need not be decided by a jury because the undisputed facts show
    that Duttas were negligent to a far greater degree than Ms. Pili ........................... 31
CONCLUSION ................................................................................................... 31
ORDER .............................................................................................................. 32

## UNDISPUTED FACTS[13]

**The facts leading up to the collision, and the collision itself**

1.      On October 6, 2018, Duttas were staying at the Wyndham Hotel located at 780 W. State Street in Hurricane, Utah.[14]

2.      Nader Dutta ("Mr. Dutta") was 77 years old and Chizuko Dutta[15] ("Mrs. Dutta") was 89 years old at the time of the collision.[16]

---

[13] The following Undisputed Facts are taken from the parties briefing on the Motion for Summary Judgment. Motion for Summary Judgment ¶¶ 1-41 at 4-9; Opposition ¶¶ 1-20 at 17-20. Some of the Undisputed Facts were taken from the witness' and parties' sworn depositions but not specifically listed in the fact summaries in the parties' briefing. The facts, or portions thereof, identified in the parties' briefing that do not appear in these Undisputed Facts are either disputed; not supported by the cited evidence; not material; or are not facts, but rather, are characterization of facts, opinions, statements from reports that contain opinions, statements about facts, observations, or legal argument. Additionally, these Undisputed Facts contain facts that are not material to the issues and eventual decision but provide a complete background of the events and circumstances and give context to the parties' arguments.

[14] Third Amended Complaint ¶ 6; Motion for Summary Judgment ¶ 1.

[15] Mrs. Chizuko Dutta utilized an interpreter, Miyako Okamoto, during her deposition, *see* 54-3: Chizuko Dutta Depo. 2:11.

[16] Third Amended Complaint ¶ 6.



**Key** Fig. 1:

   Yellow circle: Wyndham Hotel

   Orange circle: Dairy Queen

   Black box: Ingress/egress to hotel parking lot

   Red circle: Intersection of 700 W and State Street

   Yellow star: Approximate collision location

   Blue circle: Mekong Kitchen Thai restaurant

   Green circle: Costa Vida restaurant

   Purple rectangle: location to which Ms. Pili was intending to travel by turning left

   3.  As evening approached, Duttas planned to walk to the Mekong Kitchen Thai

Restaurant (light blue circle, Fig. 1[17]) which was across State Street.[18] Mekon Kitchen and Costa

Vida (green circle, Fig. 1.) share a common wall.

---

[17] Figures 1 and 2 are court-created images for illustrative purposes based on the images used in the depositions. At the depositions, no objection was made to the images. (*see* 54-2: Nader Dutta Depo. 40:18-41:5; 54-3: Chizuko Dutta Depo. 71:11-21, 81:6-12; 54-4: Ms. Pili Depo. 22:12-19).

[18] Third Amended Complaint ¶ 7; Motion for Summary Judgment ¶ 2.

4.     The Wyndham Hotel (yellow circle, Fig. 1) was located approximately 600 feet west of the nearest marked crosswalk[19] (red circle, Fig. 1.) which is at the intersection of 700 W and State Street. The hotel is approximately 200 feet northeast of Mekon Kitchen.[20]

5.     Mr. Dutta testified that he and his wife "left the hotel" through "the main entrance" and walked to the hotel parking lot's ingress/egress (solid black box, Fig. 1).[21]

6.     One of the responding officers testified that the width of State Street from shoulder to shoulder was approximately ninety feet.[22]

7.     When asked if he looked for a crosswalk, Mr. Dutta testified:

I looked for it on the right side, which is to the west side. There was no crosswalk. I looked to the left side. There's a [Dairy Queen] (orange circle, Fig. 1) right next [to] the hotel on the north side, northeast side, and once the day before I went to look for a crosswalk, there was no traffic, but there was a traffic light there. I didn't see any crosswalk.[23]

8.     When Defendant's counsel asked if Mr. Dutta "never saw any crosswalk at any point in time before the accident happened, in this area of State Street in Hurricane, Utah,"[24] Mr. Dutta testified:

A. No. I don't know. [The day before,] I went to the Dairy Queen place right next to the hotel, looked for a crosswalk there, but there was no crosswalk.[25]

9.     Mr. Dutta testified he was not aware of the crosswalk to the east of the hotel, at 700 W.[26]

---

[19] Third Amended Complaint ¶ 9.

[20] Id.; Motion for Summary Judgment ¶ 3.

[21] 54-2: Nader Dutta Depo. 41:14-42:15.

[22] 54-7: Ofc. Hayes Depo. 53:2-6.

[23] 54-2: Nader Dutta Depo. 67:21-68:3.

[24] Id. at 68:4-6.

[25] Id. at 68:7-9.

[26] Id. at 48:22-49:2.

10.     Mrs. Dutta testified that she was standing with her husband on the sidewalk on the north side of State Street waiting to cross the road for "20 or 30 seconds" before they began to cross because they needed to "make sure that there was no traffic westbound."[27]

11.     Prior to crossing, Mr. Dutta saw cars traveling east and west on State Street.[28]

12.     Duttas crossed State Street from the hotel to the restaurant without using a designated marked crosswalk.[29]

13.     Mr. Dutta testified "the major reason" for walking instead of driving to the restaurant "[was] convenience."[30]

14.     After crossing the first two, westbound lanes, Duttas claim they stopped in the two-way left turn lane ("center turning lane") and looked to see if there was any traffic coming from their right in the eastbound lanes of travel.[31]

15.     Mrs. Dutta testified that "[she] felt" she was "standing [in the center lane] for quite a long time."[32]

16.     As Duttas stood in the center lane watching for eastbound traffic, a westbound traveling SUV driven by Mrs. Pili entered the center turning lane.[33]

---

[27] Motion for Summary Judgment ¶ 7 (citing 54-3: Chizuko Dutta Depo. 66:16-67:1).

[28] Motion for Summary Judgment ¶ 5 (citing 54-2: Nader Dutta Depo. 42:23-25).

[29] Third Amended Complaint ¶ 10; Motion for Summary Judgment ¶ 4.

[30] Motion for Summary Judgment ¶ 6 (citing 54-2: Nader Dutta Depo. 40:13-15).

[31] Third Amended Complaint ¶ 12.

[32] Motion for Summary Judgment ¶ 9 (citing 54-3: Chizuko Dutta Depo. 72:23-73:1).

[33] Third Amended Complaint ¶ 13.

17.     Ms. Pili testified that she was driving 20-25 miles per hours after she turned into the center turning lane.[34] The speed limit going westbound at that location was 40 miles per hour.[35]

18.     Mrs. Pili tested that she "was coming to a stop in [the center] turning lane due to oncoming traffic" so that she could "make [a] left turn."[36]

19.     Ms. Pili intended to turn into an ingress/egress road (purple rectangle, Fig. 1.) that was just east of Costa Vida to pick up her daughter (who was working at Costa Vida).[37]

20.     Ms. Pili's SUV entered the center lane and struck Duttas (yellow star, Fig. 1), causing them injuries.[38]

**Ms. Pili's testimony**

21.     Ms. Pili testified she did not see Mr. Dutta standing in the center turning lane "until the impact."[39] Ms. Pili testified she did not see Mrs. Dutta until after Ms. Pili had checked Mr. Dutta's vitals.[40]

22.     Mrs. Pili testified that "[a]s soon as [she] heard" "the thump and saw the man fly in the air, [she] stopped [her] vehicle."[41] Ms. Pili testified that she was able to bring her vehicle to a complete stop within ten feet after she hit the Duttas.[42]

---

[34] Motion for Summary Judgment ¶ 30 (citing 54-4: Pili Depo. 21:7-21).

[35] Motion for Summary Judgment ¶ 30 (citing 54-4: Pili Depo. 21:22-25); 54-7: Ofc. Hayes' Depo. 51:20-24, 52:12-19.

[36] 54-4: Pili Depo. 41:24-42:2.

[37] *Id*. at 28:25-29:12; *see* 56-8: City of Hurricane PD Driver's Statement Form at 2.

[38] Third Amended Complaint ¶ 13.

[39] 54-4: Pili Depo. 38:1-5.

[40] *Id*. at 38:5-8.

[41] *Id*. at 46:3-4.

[42] Opposition ¶ 6 (citing 54-4: Pili Depo. 46:5-17).

23.    Ms. Pili testified that she was not distracted in any way before the collision happened.[43]

24.    Ms. Pili testified that, "immediately before the collision,"[44] she "glanced up" "in [her] rearview mirror" "to see…the oncoming traffic to [her] from behind, and then look[ed] ahead to make sure that [she] was in the turning lane…so [she] wouldn't deter the oncoming traffic."[45]

25.    Ms. Pili testified that her car was in good condition and that there was nothing she could have done differently to avoid hitting Duttas.[46]

26.    Ms. Pili testified that she wore glasses when she drove because otherwise, she had difficulty seeing things that were further away.[47] Ms. Pili testified that she was wearing glasses on the night of the collision.[48]

27.    Ms. Pili testified that "the roads were wet and shiny"; that "headlights just glistened off the rain on the roads"; and that clouds "completely covered the sky" because it had rained earlier.[49] She testified that it was not raining at the time the collision occurred.[50]

28.    Ms. Pili tested that, "due to the…weather conditions," "[she] had more difficulty seeing that evening than on other nights."[51]

---

[43] Motion for Summary Judgment ¶ 31 (citing 54-4: Pili Depo. 72:12-14).

[44] 54-4: Pili Depo. 70:22-23.

[45] *Id*. at 70:22-71:4.

[46] Motion for Summary Judgment ¶ 32 (citing 54-4: Pili Depo. 70:2-21).

[47] 54-4: Pili Depo. 18:3-8.

[48] *Id*. at 18:20-25.

[49] *Id*. at 32:21-33:2.

[50] *Id*. at 33:10-12.

[51] *Id*. at 33:6-9.

29.     Ms. Pili testified that she had her headlights on at the time of the collision.[52] Ms. Pili also had functioning fog lights on the front of her car that were not being used at the time she hit the Duttas.[53]

30.     Ms. Pili testified that she did not "see the pedestrians carrying anything." She said she did not see a flashlight or any light that was coming in her direction before the collision.[54]

**Officers' testimony**

31.     Officer Hayes was dispatched to the scene at 7:46:38 p.m.[55] He arrived at the scene at 7:48 p.m.[56] He testified that Ms. Pili's vehicle did not leave any skid marks when she applied her brakes after hitting the Duttas.[57]

32.     Officer Hayes testified that he thought "it was sprinkling that day---or at that time" and that "the roadway was—may have been wet."[58]

33.     Sergeant Wright testified that, at the time of the collision, it was dark, it was drizzly. There had been rain, but -- it had been raining slightly. The road was wet. There was precipitation on the vehicle."[59]

34.     Sergeant Wright testified, after being shown photos taken of the Duttas on the date of the collision, that Mr. Dutta was wearing a "[d]ark green shirt" and "Levis" and that Mrs. Dutta was wearing "dark pants and a dark blue blouse."[60]

---

[52] *Id*. at 48:10-16.

[53] Opposition ¶ 15 (citing 54-4: Pili Depo. 49:5-18).

[54] Motion for Summary Judgment ¶ 23 (citing 54-4: Pili Depo. 72:15-20).

[55] 54-7: Ofc. Hayes Depo. 19:5-11.

[56] *Id*. at 19:12-14.

[57] Opposition ¶ 7 (citing 54-7: Ofc. Hayes Depo. 28:14-18).

[58] 54-7: Ofc. Hayes Depo. 22:8-12.

[59] 54-9: Sgt. Wright Depo. 16:15-18.

[60] *Id*. at 19:6-20.

**Duttas' testimony**

35.     Duttas testified that Mr. Dutta was carrying a powered-on, working flashlight at the time of the collision.[61] Mr. Dutta testified that the "[f]lashlight was pointing directly across the point of impact" "to the curb in front of me."[62] And that the "[f]lashlight was on, pointing towards the center."[63] He agreed it was "not pointing toward either east traffic or westbound traffic."[64] He said, "[w]hether it was straight across or slightly angle, I'm not sure."[65] Mrs. Dutta testified that "[Mr. Dutta] held [the flashlight] on his right hand and was moving around. Swinging." toward eastbound traffic.[66] Neither testified that the flashlight was pointed toward westbound traffic, or that they were looking in that direction.

36.     Duttas testified that once they reached the center turning lane, they were looking west at eastbound traffic.[67]

37.     Duttas testified that other than a flashlight, they did not have anything on that was reflective.[68]

38.     Duttas admit, on being asked in an interrogatory if State Street was wet when they crossed, that they "have no memory of the state of the roadway."[69]

---

[61] 54-3: Chizuko Dutta Depo. 62:19-20; 54-2: Nader Dutta Depo. 36:23-24.

[62] 54-2: Nader Dutta Depo. 56:7-8, 10-11.

[63] *Id*. at 55:10.

[64] *Id*. at 56:15-17.

[65] *Id*. at 56:17-18.

[66] 54-3: Chizuko Dutta Depo. 63:25-64:3.

[67] 52-4: Nader Dutta Depo. 57:11-58:8; 54-3: Chizuko Dutta Depo. 73:2-7.

[68] Motion for Summary Judgment ¶ 21 (citing 54-3: Chizuko Dutta Depo. 62:4-23; 54-2: Nader Dutta Depo. 44:3-9).

[69] 54-3: Chizuko Dutta Depo. at 65.

39.     Mr. Dutta testified: "I remember vaguely the sun set at 7:00…and the twilight ended at 7:32, according to Google, on October 6, 2018. I checked that." Regarding the lighting when he got to the center turning lane, he said:

> Similar to what had happened just before I crossed the street. As I said, it was dark but not overly dark…It's around 7:30, I would say, something like that…It was not dark, in my opinion, but is a subjective definition.

40.     Mr. Dutta testified that he had "no idea" when asked if Ms. Pili should have seen him before the collision.[70]

41.     When asked if he had any facts that would support the belief that Ms. Pili should have seen Duttas before the collision happened, Mr. Dutta testified that he had "no recollections [Ms. Pili] hit [him] because [he] was unconscious so [he had] no opinion on it".[71]

42.     When asked if he had any opinion on anything Ms. Pili did that she shouldn't have done before the collision happened, Mr. Dutta testified that he had "no opinion because [he] didn't see [Ms. Pili] hit [him]."[72]

43.     When asked if she had an opinion on whether or not Ms. Pili should have seen Duttas in the roadway before the collision, Mrs. Dutta testified that Ms. Pili "should have seen" Duttas "since the vehicle came from behind."[73] Mrs. Dutta testified "I don't have any memory, even the fact that I was hit by a vehicle. The accident itself, I don't have any memory."[74]

44.     Mrs. Dutta testified "no" when asked if she would have had Ms. Pilli do anything differently.[75]

---

[70] Motion for Summary Judgment ¶ 25 (citing 54-2: Nader Dutta Depo. 68:19-21).

[71] Motion for Summary Judgment ¶ 26 (citing 54-2: Nader Dutta Depo. 69:2-9).

[72] Motion for Summary Judgment ¶ 29 (citing 54-2: Nader Dutta Depo. 76:1-5).

[73] Motion for Summary Judgment ¶ 27 (citing 54-3: Chizuko Dutta Depo. 93:24-94:6).

[74] 54-3: Chizuko Dutta Depo. 94:18-95:2.

[75] Motion for Summary Judgment ¶ 28 (citing 54-3: Chizuko Dutta Depo. 100: 4-8).

45.     Mrs. Dutta testified that she has no evidence to dispute that the collision happened after 7:30 p.m.[76]

**Ms. Dayley's testimony**

46.     One of the witnesses to the collision testified that Mrs. Dutta's "hair and face" smelled of alcohol.[77]

**Plaintiffs' insurance and this lawsuit**

47.     At all relevant times, Duttas maintained an insurance policy with Defendant, which included UIM coverage.[78]

48.     On November 25, 2019, Defendant issued a denial on the claim, determining that that Duttas were more than 50% at fault for the collision.[79]

49.     On April 6, 2020, Duttas filed suit.[80]

**STANDARD OF REVIEW**

**Summary Judgment Standard of Review**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[81] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way"[82] or "if a reasonable jury could return a verdict for the nonmoving party."[83] A fact is

---

[76] Motion for Summary Judgment ¶ 18 (citing 54-3: Chizuko Dutta Depo. 48:18-21).

[77] Motion for Summary Judgment ¶ 34 (citing 54-6: Dayley's Depo. 22:15-20).

[78] Third Amended Complaint ¶ 28.

[79] *Id*. at ¶ 33.

[80] Complaint, docket no. 2, filed April 6, 2020.

[81] Fed. R. Civ. P. 56(a).

[82] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[83] *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994) (internal quotations omitted).

material if "it is essential to the proper disposition of [a] claim."[84] And in ruling on a motion for summary judgment, the factual record and all reasonable inferences drawn therefrom are viewed in a light most favorable to the nonmoving party.[85]

The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[86] The movant "need not negate the nonmovant's claim, but need only point out ... that there is an absence of evidence to support the nonmoving party's case."[87] If the moving party carries this initial burden, the nonmoving party "may not rest upon mere allegations or denials of [the] pleading[s], but must set forth *specific facts* showing that there is a *genuine issue* for trial as to those dispositive matters for which it carries the burden of proof."[88] "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient to defeat a properly supported motion for summary judgment."[89]

### Special Considerations in Negligence Cases

Negligence, causation, and comparative fault are usually jury questions. However, there are instances where they may be decided as a matter of law. "Whether an actor's conduct constitutes negligence is generally a factual question left to a jury. The question should only be answered by the court in rare cases where the evidence is susceptible to only one possible inference."[90] "When 'the facts are undisputed and reasonable minds can draw only one

---

[84] *Adler*, 144 F.3d at 670.

[85] *Id.*

[86] *Id.* at 670-71.

[87] *Universal Money Ctrs., Inc.*, 22 F.3d at 1529 (internal quotations omitted).

[88] *Id.* (cleaned up; emphasis in original).

[89] *Id.* (internal quotations omitted).

[90] *Roberts v. Printup*, 422 F.3d 1211, 1218 (10th Cir. 2005).

conclusion from them,' causation is a question of law for the court."[91] Because "no reasonable

jury could determine [Defendant's] design of the crossing was an equal or greater contributor to

the accident than [Plaintiff']s failure to stop, look, and listen, . . . summary judgement was . . .

appropriate under Wyoming's comparative negligence statute."[92]

## APPLICABLE LAW

### Utah negligence law applies because Utah has
### the "most significant relationship" with the collision

Defendant filed a motion for summary judgment, arguing that Texas negligence law

applied.[93] Duttas countered in their opposition that Utah negligence law applied.[94] Defendant

concedes that the parties did not stipulate if Utah or Texas law applied to the negligence aspects

of the case.[95] (The stipulated order entered by Judge Kohler regarding applicable contract law

did not address which state's law applied to the negligence aspect of the case.[96])

"In making choice of law determinations, a federal court sitting in diversity must apply

the choice of law provisions of the forum state in which it is sitting."[97] This is a diversity action[98]

being heard in Utah, therefore, Utah's choice of law doctrine applies.

Utah adopted the "most significant relationship" test from the Restatement (Second) of

Conflict of Laws § 145, which states:

> The rights and liabilities of the parties with respect to an issue in tort are determined by
> the local law of the state which, with respect to that issue, has the most significant

---

[91] *Pioneer Centres Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1334 (10th Cir. 2017) (*quoting Berg v. United States*, 806 F.2d 978, 981 (10th Cir. 1986)).

[92] *Otten v. BNSF Ry. Co.*, No. 22-8025, 2023 WL 1948626, at *13 (10th Cir. Feb. 13, 2023).

[93] Motion for Summary Judgment 9.

[94] Opposition 20.

[95] Reply 1.

[96] Order Granting Stipulated Motion at 1.

[97] *Shearson Lehman Brothers v. M & L Investments,* 10 F.3d 1510, 1514 (10th Cir.1993) (internal citations omitted).

[98] Third Amended Complaint ¶¶ 1-4.

relationship to the occurrence and the parties under the principles stated in § 6 [stating choice-of-law principles].[99]

The Restatement also provides guidance for determining the most significant relationship:

> Contacts to be taken into account…include:
>    (a) the place where the injury occurred,
>    (b) the place where the conduct causing the injury occurred,
>    (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>    (d) the place where the relationship, if any, between the parties is centered.
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.[100]

Utah negligence law will apply because Utah has the most connections to the collision that injured Duttas. First, the place where Duttas' injuries occurred was in Utah. They were injured immediately upon impact with Ms. Pili's vehicle. Second, the place where the conduct causing the injury occurred was in Utah. The collision where Ms. Pili struck the Duttas took place in Hurricane, Utah. Third, the relevant parties are rooted in different states—Duttas are residents of Texas and Ms. Pili, the tortfeasor, is a resident of Utah.[101] Finally, the relationship between the relevant parties is centered in Utah because that is where the collision occurred. Therefore, because the majority of factors show connection to Utah, Utah negligence law will apply.

### Under Utah's comparative negligence law, Duttas may not recover if their fault exceeds Ms. Pili's

To recover damages, Duttas must convince the trier of fact that Ms. Pili had more fault than they. Utah's comparative negligence statute states in part that "[a] person seeking recovery may recover from any defendant…whose fault…exceeds the fault of the person seeking

---

[99] *Forsman v. Forsman*, 779 P.2d 218, 219 (Utah 1989) (quoting § 145(1)) (bracketed text in original).

[100] *Forsman*, 779 P.2d at 219 (quoting § 145(2)).

[101] 54-4: Pili Depo. 15:4-5.

recovery…."[102] "'Defendant' means a person…who is claimed to be liable because of fault to any person seeking recovery."[103] "'Fault' means any … act[] or omission proximately causing or contributing to injury or damages sustained by a person seeking recovery, including negligence in all its degrees [or] comparative negligence…."[104]

Ms. Pili is the "defendant" for purposes of "§§ 78B-5-817 to 78B-5-823."[105] While Duttas have not sued Ms. Pili, they necessarily argue that "[her] negligence was a proximate cause of the collision"[106] and that "[her] negligence exceeds any fault of Duttas in reasonably choosing to cross the road where they did."[107] Therefore, the question on Defendant's motion for summary judgment is whether the undisputed material facts, construed in the light most favorable to Duttas, show that their fault exceeded Ms. Pili's fault.

## DISCUSSION

The Utah Supreme Court described well how the facts of this case must be viewed:

> [W]henever a mishap has occurred which has injured someone, it is easy by the use of hindsight to see how it could have been avoided and to blame someone for its occurrence. But it is foresight and not hindsight by which we must analyze the situation to resolve the issue here involved.[108]

---

[102] Utah Code Ann. § 78B-5-818(2).

[103] *Id*. at 817(1).

[104] *Id*. at 817(2).

[105] *Id*. at 817.

[106] Third Amended Complaint ¶ 24.

[107] *Id*. at ¶ 25.

[108] *Larsen v. Johnson*, 21 Utah 2d 92, 94 (1968).

**Ms. Pili's fault did not exceed Duttas' negligence**

Duttas argue that "Ms. Pili's negligence was a proximate cause of the collision"[109] Duttas argue Ms. Pili's fault is shown by seven facts:

(1) Ms. Pili "[f]ail[ed] to yield to pedestrians, including pedestrians in an unmarked crosswalk."[110]

(2) Ms. Pili "was traveling approximately 35-40 mph in the inside, fast lane of westbound traffic";[111]

(3) Ms. Pili "[f]ail[ed] to keep a proper lookout"[112] by "looking in her rearview mirror, as she was worried about slowing down traffic behind her, and to her left while attempting to find an entrance to the appropriate parking lot";[113]

(4) there were "no vehicles directly in front of [Ms. Pili] to impede her view";[114]

(5) a motorist behind Ms. Pili said Ms. Pili "'sudden[ly]…started to go over to the turning lane'";[115]

(6) Ms. Pili admitted that she didn't see the Duttas "'until [she] heard a thump and then looked forward and saw the man going through the air;'"[116] and

(7) Ms. Pili "was not using her lower driving lights."[117]

---

[109] Third Amended Complaint ¶ 24.

[110] *Id*. at ¶ 23(b).

[111] Opposition 25.

[112] Third Amended Complaint ¶ 23(a).

[113] Opposition 25.

[114] *Id.*

[115] *Id.* (quoting Anna Reimers).

[116] *Id.* (quoting Ms. Pili).

[117] *Id*. at 26.

"Fault," includes "any … act[] or omission proximately causing or contributing to injury or damages sustained by a person seeking recovery, including negligence in all its degrees [or] comparative negligence…."[118] Ms. Pili's collision with Duttas proximately caused their injury, so Ms. Pili had at least some fault. However, Duttas have failed to raise a genuine issue of material fact that Ms. Pili's actions constituted greater fault than their own. Duttas' arguments either (1) misconstrue the facts or (2) rely on facts that do not show negligence.

**Two of Duttas' arguments misconstrue deposition testimony and do not show Ms. Pili's negligence**

*Ms. Pili was not required to yield to Duttas because they were not in a crosswalk, marked or unmarked* (Argument no. 1)

Duttas claim that Ms. Pili failed to yield to them while they crossed State Street in an unmarked crosswalk.[119] Utah's Traffic Code requires "the operator of a vehicle" to "exercise care to avoid colliding with a pedestrian."[120] And to

yield the right-of-way by slowing down or stopping if necessary:

    (i)    to a pedestrian crossing the roadway[121] *within a crosswalk* when the pedestrian is on the half of the roadway upon which the vehicle is traveling; or

    (ii)    (ii) when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger.[122]

The Code also admonishes pedestrians to yield to vehicles. "A pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an

---

[118] Utah Code Ann. § 78B-5-817(2).

[119] Third Amended Complaint ¶ 23(b).

[120] Utah Code Ann.  § 41-6a-1006(1)(a).

[121] *See id.* at 102(63) ("(a) 'Roadway' means that portion of highway improved, designed, or ordinarily used for vehicular travel. (b) 'Roadway' does not include the sidewalk, berm, or shoulder, even though any of them are used by persons riding bicycles or other human-powered vehicles. (c) 'Roadway' refers to any roadway separately but not to all roadways collectively, if a highway includes two or more separate roadways.").

[122] *Id.* at 1002(1)(a) (emphasis added).

intersection shall yield the right-of-way to all vehicles on the roadway."[123] Bluntly put, "[e]xcept as otherwise provided in this chapter, a pedestrian on a roadway shall yield the right-of-way to all vehicles on the roadway."[124]

Duttas admit they were not in a marked[125] crosswalk.[126] They argue that Ms. Pili was obligated to yield to them because they were in an unmarked crosswalk, but this is inaccurate. An unmarked marked crosswalk includes

> that part of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the highway[127] measured from: (A) the curbs; or (B) in the absence of curbs, from the edges of the traversable roadway….[128]

"The statutory definition [of unmarked crosswalk] implies that [one exists] only if a street's sidewalk (or the edge of the traversible roadway) is intersected and continues on."[129] An intersection includes a "+" intersection[130]: "the area embraced within the prolongation or connection of the lateral curb lines"; and a "T" intersection[131]: "the lateral boundary lines of the roadways of two or more highways that join one another."[132]

---

[123] *Id.* at 1003(1).

[124] *Id.* at 1009(6).

[125] *Id.* at 102(13)(b) ("[A]ny portion of a roadway at an intersection or elsewhere distinctly indicated for pedestrian crossing by lines or other markings on the surface.").

[126] *Supra* Undisputed Facts ¶ 9.

[127] Utah Code Ann. § 41-6a-102(28)("'Highway' means the entire width between property lines of every way or place of any nature when any part of it is open to the use of the public as a matter of right for vehicular travel.").

[128] *Id.* at 102(13)(a).

[129] *Langlois v. Rees*, 10 Utah 2d 272, 275 (1960).

[130] *Langlois*, 10 Utah 2d at 274 ("The X intersection immediately to the north [of First Avenue and State Street, Salt Lake City, Utah] is controlled by a semaphore light. Likewise, the X intersection immediately to the south [of First Avenue and State Street] is controlled by a semaphore.").

[131] *Id.* ("The accident occurred at the T intersection of First Avenue and State Street on a snowy afternoon.").

[132] Utah Code Ann. § 41-6a-102(30).



**Key** Fig. 2:

> Pink circle: Intersection of 1150 W and State Street
> Dark green circle: Intersection of 1000 W and State Street
> Dark blue circle: Intersection of 850 W and State Street

Here, the only nearby "+" intersections—which contained marked crosswalks—were at 700 W

(red circle, Fig. 1) and 1150 W (pink circle, Fig. 2). There were also two nearby "T"

intersections—which contained no marked crosswalks: 1000 W (dark green circle, Fig. 2) and

850 W (dark blue circle, Fig. 2). The ingress/egress of the hotel parking lot, where Duttas

crossed State Street,[133] was not an intersection. Even if Duttas had crossed State Street from

1000 W, the sidewalk on 1000 W "terminate[d] at [the] intersection," therefore "terminat[ing]

without crossing the street…."[134]

Duttas have provided no evidence that they were in an unmarked crosswalk. Therefore,

Ms. Pili was not required to yield to them while they were standing in the center turning lane.

*Ms. Pili did not "suddenly" move into the center turning lane* (Argument no. 5)

Duttas claim that a motorist behind Ms. Pili said Ms. Pili "'sudden[ly]…started to go

over to the turning lane.'"[135] Duttas derived this from their own statement of facts: "Mrs. Pili

---

[133] *Supra* Undisputed Facts ¶¶ 6, 12.

[134] *Langlois*, 10 Utah 2d at 275.

[135] Opposition 25 (quoting Anna Reimers).

presented no danger to the Dutta's until she suddenly swerved into the center specialty lane."[136]
This fact is not included in this order's undisputed facts because—like many of the facts Duttas
recite—it is not an accurate representation of the witness's testimony. The motorist, Anna
Reimers, testified:

> Q. Were there any cars between the front of your car and the rear of [Ms. Pili's] car?
> A. No.
>
> Q. Okay. Describe for us what you saw.
> A. At what point?
>
> Q. At the point that you've turned off of [700 W], you're in this No. 1 lane heading
> westbound on State Street toward Wendy's. What happened next?
> A. So all of a sudden the SUV in front of me, she started to go over to the turning lane so
> she started veering left. And then just -- I can't remember if -- I think she slammed on her
> brakes because I remember her--- the back taillights being lit.
> And then I just remember seeing what I thought like two cars had hit because I just saw
> debris. It seemed like just debris, random debris flying everywhere, so I slammed my
> brakes and just sat there and was like, "What the heck just happened?"
>
> Q. But when you saw the [white] car moving over into this middle lane, like how would
> you describe how it was moving? Was it a sudden jerk? Was it just kind of veering off
> gently? Was it slowing—
> A. No. No. Because I was right behind it, so the way it turned into the left lane there was
> nothing abnormal about it. The only thing abnormal was when she slammed on her
> brakes. [137]

Ms. Reimers additionally wrote in her statement to the Hurricane City Police Department on the
date of the accident, "[Ms. Pili] was driving at a normal pace."[138] Duttas argue multiple times in
their opposition that Ms. Pili's vehicle moved "suddenly"[139] into the center turning lane but this
is not supported by evidence.

---

[136] *Id*. at ¶ 12.

[137] 54-5: Reimers Depo. 16:1-17:7.

[138] *Id*. at at 27, Voluntary Statement of Facts.

[139] *See* Opposition 26 ("It is audacious to believe that reasonable minds could not find [] fault of a motorist who
suddenly changes lanes…."); Opposition 28 ("… 'sudden[ly]' entering the middle lane…"); Opposition 29 ("…a
motorist who suddenly changes lanes…").

**The remainder of Duttas' stated facts do not show Ms. Pili's negligence**

*Ms. Pili's focus on vehicles behind and ahead of her was not negligent* (Argument no. 3)

Duttas claim that Ms. Pili failed to keep a proper lookout by "looking in her rearview mirror, as she was worried about slowing down traffic behind her, and to her left while attempting to find an entrance to the appropriate parking lot."[140] These actions are not negligent. These actions are required by the Utah Traffic Code. The center turning lane is "provided for vehicle operators making left turns in either direction."[141] If a highway has a center turning lane, a driver may not turn left from any other lane.[142] Ms. Pili was in the center turning lane when she collided with the Duttas.[143] The center turning lane is NOT a safe harbor for pedestrians crossing in the middle of a block. Because Ms. Pili intended to turn left, she was *required* to be in the center turning lane. These facts demonstrate not that she was negligent but was following Utah's traffic laws.

*Traveling 40 mph in the left-hand westbound travel land was not negligent* (Argument no. 2)

Duttas argue that Ms. Pili was traveling 35-40 mph in the far-left westbound lane.[144] Utah law states that one may not go faster "than is reasonable and prudent under the existing conditions."[145] These include

> (a) approaching and crossing an intersection or railroad grade crossing; (b) approaching and going around a curve; (c) approaching a hill crest; (d) traveling upon any narrow or winding roadway; (e) traveling in, through, or approaching other hazards that exist due to pedestrians, other traffic, weather, or highway

---

[140] Third Amended Complaint ¶ 23(a); Opposition 25.

[141] Utah Code Ann. § 41-6a-801(3)(a).

[142] *Id*.

[143] *Supra* Undisputed Facts ¶¶ 18, 20.

[144] Opposition 25 (citing 54-5: Reimers Depo. 17:24-18:7).

[145] Utah Code Ann. § 41-6a-601(1).

conditions; and (f) the speed causes the person to fail to maintain control of the vehicle or stay within a single lane of travel."[146]

The posted speed limit for that location was 40 mph.[147] Travel in the far-left lane at 40 mph was permissible because none of the above-listed factors requiring lower speed were present. When Ms. Pili approached Costa Vida to turn left, she testified that she slowed down after she entered the center turning lane,[148] thereby complying with subsection (a) of the statute. Ms. Pili's speed of travel was not negligent.

*The absence of vehicles directly in front of Ms. Pili does not show her negligence because the road, weather, visibility, and Duttas' dark clothing made it difficult for a reasonable person to see* (Argument no. 4)

Duttas claim that there were no vehicles directly in front of Ms. Pili "to impede her view."[149] This argument does not show Ms. Pili's fault for the collision; it is just a fact that there were no other vehicles in front of Ms. Pili. Ms. Pili testified that "the glistening of the oncoming traffic with their lights shining…on the wet roads" "would have prevented [her] from seeing [Duttas] prior to impact.[150] Even though there were no vehicles directly in front of Ms. Pili, the recent rain on the road with oncoming headlights, the darkness, and Duttas' dark clothing impacted her ability to see them. This absence of vehicles in front of her does not show her negligence.

---

[146] *Id.*

[147] *Supra* Undisputed Facts ¶ 17.

[148] *Id*. at ¶¶ 17-18.

[149] Opposition 25, referencing 54-4: Pili Depo. 49:24-50:3.

[150] 54-4: Pili Depo. 49:19-23.

*Ms. Pili's admission that she did not see Duttas does not constitute negligence because a reasonable person would not expect pedestrians to be standing in the center turning lane* (Argument no. 6)

Duttas quote Ms. Pili's deposition testimony when she said, "I did not see the pedestrians at all until I heard a thump and then looked forward and saw the man going through the air."[151] They add that Ms. Pili did not know Mrs. Dutta was there until after Ms. Pili had checked Mr. Dutta's vitals.[152] Duttas claim that this admission "is enough evidence to establish [Ms. Pili's] negligence."[153] They cite to a Utah Supreme Court case in which a driver struck a pedestrian *in a marked crosswalk* and the driver admitted he didn't see the pedestrian until after the collision.[154] Because Duttas have not proved that they were in a marked or unmarked crosswalk, Ms. Pili's admission has no significance as to fault.

*Ms. Pili is not shown to be negligent by not having her lower driving lights on* (Argument no. 7)

Duttas argue that if Ms. Pili had used her lower driving lights on in addition to her headlights, the lower driving lights "would have further illuminated the road directly in front of [her] despite" the wet road.[155] Utah law only requires a motor vehicle to have "at least two head lamps with at least one on each side of the front of the motor vehicle."[156] Ms. Pili had her headlights on at the time of the collision.[157] That is sufficient for Utah law. Not having her fog lights on does not violate any standard or duty.

---

[151] Opposition 25, referencing 54-4: Pili Depo. 37:16-18.

[152] Opposition 25, referencing 54-4: Pili Depo. 38:5-8.

[153] Opposition 25.

[154] *Coombs v. Perry*, 2 Utah 2d 381, 384 (1954) (emphasis added).

[155] Opposition 26.

[156] Utah Code Ann. § 41-6a-1604(1).

[157] *Supra* Undisputed Facts ¶ 29.

**Duttas were more than 50% at fault for the collision**

Duttas' actions in crossing State Street were unwise and contrary to their legal duties as pedestrians. As previously stated, "fault" is "any…act…proximately causing or contributing to injury or damages sustained by a person seeking recovery, including negligence in all its degrees…." Duttas' acts, reviewed below, proximately resulted in their injuries and demonstrate that they are at greater fault for the collision than Ms. Pili.

**Duttas failed to use a marked or unmarked crosswalk to walk across State Street**

Duttas admit they were not in a marked[158] crosswalk when they crossed State Street.[159] A marked crosswalk at the four-way intersection of 700 W and State Street was located approximately 600 feet east of their hotel.[160] Mr. Dutta went to the Dairy Queen the day before to look for a crosswalk and testified that "there was a traffic light there" but that "[he] didn't see any crosswalk."[161] Duttas give no any evidence to show that the painted crosswalk at the intersection of 700 W and State Street was faded or difficult to see, or that it was repainted after the collision. Even if Duttas could not have found a marked crosswalk, they had a working vehicle they could have used to drive to the restaurant.[162] Duttas' choice to not use a marked crosswalk was negligent.

Duttas claim they were in an unmarked crosswalk when they crossed State Street.[163] As previously stated, "[t]he statutory definition [of unmarked crosswalk] implies that [one is there]

---

[158] Utah Code Ann. § 41-6a-102(13)(b) ("[A]ny portion of a roadway at an intersection or elsewhere distinctly indicated for pedestrian crossing by lines or other markings on the surface.").

[159] *Supra* Undisputed Facts ¶ 12.

[160] Third Amended Complaint ¶ 9; red circle, Fig. 1.

[161] *Supra* Undisputed Facts ¶¶ 8-9.

[162] *Id*. at ¶ 13.

[163] Third Amended Complaint ¶ 23(b).

only if a street's sidewalk (or the edge of the traversible roadway) is intersected and continues on."[164] Duttas' description of crossing State Street does not support the statutory definition:

- Duttas waited to cross State Street "to make sure that there was no traffic westbound";[165] they "carefully proceeded to cross the street from the hotel to the restaurant";[166] they "moved slowly and proceeded only when safe."[167] These facts are details about *Duttas*, not about *the unmarked crosswalk*.

- "[Duttas] had seen others [cross State Street near that location]."[168] And Officer Hayes testified that, in the six years he had lived in Hurricane, Utah, he had seen "individuals crossing State Street outside of a marked crosswalk over a dozen times."[169] A plaintiff in *Langlois v. Rees* made the same argument and the Utah Supreme Court rejected it: "[U]se, by itself, does not establish a right of way for pedestrians."[170]

Duttas have presented no evidence that where they crossed State Street was in an unmarked crosswalk. Crossing in that location was negligent.

**Duttas negligently crossed a five-lane medium speed highway after sunset, recently after it had rained, while wearing dark clothing**

Duttas made a handful of poor choices in addition to not using a crosswalk across State Street. "The right of way is not absolute for either the pedestrian or the motorist."[171] "Both motorists and pedestrians have a continuing duty at all times to use reasonable care for the safety

---

[164] *Langlois*, 10 Utah 2d at 275.

[165] *Supra* Undisputed Facts ¶ 10.

[166] Third Amended Complaint ¶ 10.

[167] *Id.*

[168] *Id.*

[169] 54-7: Ofc. Hayes Depo. 81:17-25.

[170] *Langlois*, 10 Utah 2d 275 (referencing *Henderson v. Brown*, 214 Md. 463).

[171] *Id.* at 275.

of others, even when one has the right of way over the other."[172] Duttas decided to walk to Mekon Kitchen instead of driving because it was more convenient for them.[173] They provide no evidence that their vehicle did not work or that they otherwise could not drive to the restaurant. State Street is a wide highway[174]consisting of two lanes in each direction plus a center turning lane.[175] At that location, it has a 40 mph speed limit. When they crossed the street it was after sunset.[176] State Street was wet because it had recently rained.[177] Duttas were not wearing reflective clothing or light-colored clothing.[178] Mr. Dutta was carrying a flashlight, but he testified it was pointed south.[179] And while Mrs. Dutta testified it was pointed south, west, and north, Duttas have provided no evidence that it was pointed east, in the direction of Ms. Pili's approach:

> Q. Ms. Dutta, what direction was the flashlight pointing while and your husband were stopped in the center lane -- when you say oncoming traffic, because you're in the center, that could technically mean either.
> …
> A. I think that it was pointing towards that arrow mark direction [the curb straight across]. But I think he was moving swinging (sic) flashlight so --So to describe more accurately, the flashlight might be rotating between the angles 30-degree to 40-degree.
> Q.·Did you see your husband moving the flashlight around in his right hand when you got to the center lane?
> A.·Yes.
> Q.·Okay. What direction was the flashlight pointing when your husband was moving it around?
> A.·Yeah, like I state before, mostly it was the westbound. But since he was moving the flashlight, it was varying between 30-degree to 40-degree.

---

[172] *Fox v. Taylor*, 10 Utah 2d 174, 178 (1960).

[173] *Supra* Undisputed Facts ¶ 13.

[174] *Id*. at ¶ 7

[175] *Supra* Fig. 1-2.

[176] *Supra* Undisputed Facts ¶ 39; *see* Undisputed Facts ¶ 31.

[177] *Id*. at ¶¶ 27, 32-33

[178] *Id*. at ¶ 34.

[179] *Id*. at ¶ 35.

Q.·Ms. Dutta, when you say "varying between 30 and 40 degrees," that makes very little sense in terms of being able to take it down on the record so that we can preserve it. So perhaps you could use east and west or north and south instead.

A.·Mostly pointed towards the west, however, it was swinging between, you know, like, west or north and -- North and south.

Q. So the flashlight was moving north to south facing westbound?

A.·I think so.[180]

The cumulation of these undisputed facts shows that Duttas did not use reasonable care in crossing State Street.

**Duttas were negligent for using in the center turning lane, a non-pedestrian location**

The collision took place in the center turning lane where Duttas had stopped and were waiting for an opening in eastbound traffic.[181] Duttas had no right-of-way when they were in the center turning lane. As previous stated, a pedestrian's right of way includes "a pedestrian crossing the roadway *within* a crosswalk when the pedestrian is on the half of the roadway upon which the vehicle is traveling" or "when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger."[182] Duttas were not in a crosswalk at the point of collision so they were not afforded the right of way.

The definition of the center turning lane does not mention pedestrians. This lane is for vehicles "making left turns in either direction," who are not "passing, overtaking, or [traveling] through," and that has "lane markings."[183] The lane's function does not mention pedestrians. If a center turning lane is present, a vehicle turning left must use it.[184] Ms. Pili was required to be in the lane and Duttas had no right to be in the lane.

---

[180] 54-3: Chizuko Dutta Depo. 73:23-75:14.

[181] Third Amended Complaint ¶ 12; 54-2: Nader Dutta Depo. 54:8-13.

[182] Utah Code Ann. § 41-6a-1002(1)(a) (emphasis added).

[183] *Id*. at 102(84).

[184] *Id*. at 801(3).

**Duttas negligently failed to watch westbound traffic while in the center turning lane**

Duttas admit that, while stopped in the center turning lane, they were looking toward the west at eastbound traffic.[185] During their respective depositions, Duttas were clear about their lack of observation to the east:

> Mr. Dutta:
> Q. When was the last time you looked towards your left, which would be eastbound on State Street?
> A. I don't remember it.
> Q. Okay. So you don't remember if you would have been back where this black box (*see* Fig. 1) is or in the shoulder area, [or] in the [in the far right line], the last time you would have looked at traffic that was to the east but traveling westbound?
> A. I remember from the entrance where this black box is, from there to the point of impact, I looked to my left, and there was (sic) no cars coming. That's when I had decided to make my move and get to [point of impact].
> Q. Okay.
> A. That was the last time I was turning and looking to the east side.
> Q. Were you looking to the east the entire time that you were crossing those two lanes of traffic that go from east to west on State Street?
> A. Correct. Correct.
> Q. Okay. And then when you got to the center turn lane, you began looking to the traffic that was traveling eastbound on State Street to your right?
> A. Yeah. From west to east, yes.[186]

> Mrs. Dutta:
> Q. During the time when you were stopped in the center lane, your head was turned towards eastbound traffic…
> A.·Yes. To the direction of the oncoming traffic.
> Q.·What direction was your husband's head facing, his eyes -- eyesight facing at the time when you were stopped in the center lane before the impact happened?
> A.·Understood, the same.[187]
>
> A. I was standing at the center yellow line on the -- on the yellow line, actually, I was standing. And then looking towards the eastbound cars only. And then I was so intent looking that direction, so I didn't see anything else…
> Q.·Okay.·So you didn't see any vehicles westbound before the accident happened while you were in the roadway?
> A.·You're right.

---

[185] Third Amended Complaint ¶ 12.

[186] 54-2: Nader Dutta Depo. 57:11-58:8.

[187] 54-3: Chizuko Dutta Depo. 73:2-11.

> Q.·Did you see any vehicles traveling on State Street, also known as Scenic Byway and Highway 9 – so this is the road you're crossing. Did you see any traffic westbound?
> A.·I was paying attention to the two lanes, you know, vehicles in front of the hotel and on the restaurant side. Other than that, I didn't pay any other attention. I don't remember.[188]

Duttas were watching for eastbound traffic but not westbound traffic. Vehicles from both directions could legally be entering and exiting the center turning lane to turn left. "If [Duttas] did not look, [they were] negligent."[189] Duttas failure to watch westbound oncoming traffic was negligent.

### The negligence analysis need not be decided by a jury because the undisputed facts show that Duttas were negligent to a far greater degree than Ms. Pili

Duttas argue that "[i]f there is a question on who bears the majority of the negligence it should be resolved by the jury."[190] As shown above in discussion of the standard of review, this is not an ironclad rule. Because the facts are undisputed and reasonable minds can draw only one conclusion as to who bears the majority of the negligence, this matter must not be presented to a jury.

### CONCLUSION

Duttas argue that it would be "audacious" to find them at greater fault than Ms. Pili. But, like the Utah Supreme Court, "[i]t is our opinion that this accident, unfortunate and regrettable though it was in causing damage and injury to [Duttas], was not one which, in any reasonable view of the situation, could be blamed upon any lack of due care by the defendant."[191] Duttas were not in a crosswalk when they crossed State Street. They did so when it was dark outside

---

[188] 54-3: Chizuko Dutta Depo. 59:16-60:15.

[189] *Langlois*, 10 Utah 2d at 276.

[190] Opposition 2.

[191] *Larsen*, 21 Utah 2d at 95.

and after it had recently rained. They used an impermissible path and lane for pedestrians when they were struck. They were not looking toward the oncoming traffic from both directions. Their fault, on these undisputed facts, markedly exceeds Ms. Pili's.

**ORDER**

IT IS HEREBY ORDERED that Amica Mutual Insurance Company's Motion for Summary Judgment[192] is GRANTED. Plaintiff's causes of action are DISMISSED WITH PREJUDICE.

The Clerk is directed to close the case.

Signed July 3, 2023.

BY THE COURT

David Nuffer
United States District Judge

---

[192] Defendant Amica Mutual Insurance Company's Motion for Summary at 2, docket no. 54, filed Feb. 3, 2022.